## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RITA FALCON                                        )
                                                   )
              Plaintiff,                )     Case No.  20-cv-6427
                                                   )
      v.                                    )     The Honorable Gary Feinerman
                                                   )     Magistrate Judge Gabriel A. Fuentes
                                                   )
THE NORTHEAST ILLINOIS                             )
REGIONAL COMMUTER RAILROAD                         )
CORPORATION d/b/a METRA                            )
                                                   )
              Defendant.                )

### NOTICE OF FILING

**PLEASE TAKE NOTICE** that on February 1, 2021 , I caused to be E-filed with the Clerk of the above Court Plaintiff's Amended Complaint  copies of which is attached hereto and served upon you.

By: s/ Joshua N Karmel
           One of the attorneys for the Plaintiff

Joshua N Karmel
The Law Offices of Joshua N Karmel
3000 Dundee Rd., Ste 311
Northbrook, ILL  60062
w1226@gmail.com
847-282-4942

Bradley E. Karlin,
Of Counsel, The Law Offices of Joshua N Karmel
3000 Dundee Rd., Ste 311
Northbrook, Illinois 60062
karlinlegal@gmail.com
847-282-4942

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RITA FALCON )
              Plaintiff, )
               )      Case No.  20-cv-6427
               )
         v. )      The Honorable Gary Feinerman
               )      Magistrate Judge Gabriel A. Fuentes
THE NORTHEAST ILLINOIS )
REGIONAL COMMUTER RAILROAD )
CORPORATION d/b/a METRA )
              Defendant. )

## FIRST AMENDED COMPLAINT

Plaintiff, Rita Falcon ("Plaintiff"), by and through her undersigned counsel, and for a cause of action against the Defendant, the Northeast Illinois Regional Commuter Railroad Corporation d/b/a METRA ("Defendant" or "Metra"), submits this amended complaint and alleges as follows:

## INTRODUCTION

1. Plaintiff is alleging hostile work environment sexual harassment against the Defendant in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et.seq.*

## JURISDICTION AND VENUE

2. This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the violation of Plaintiff's civil rights under Title VII of Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*

3. Venue is proper in this judicial district under 28 U.S.C. §1391(b) as the acts complained of occurred in the Northern District of Illinois, and at all relevant times Defendant was doing business in the Northern District of Illinois.

1

## PARTIES

4. Plaintiff is a 54-year-old female resident of the Northern District of Illinois, and at all relevant times herein met the definition of an "employee" under all applicable statutes and worked for Metra.

5. Metra is a commuter rail system in the Chicago metropolitan area serving the city of Chicago and its suburbs. Defendant employs more than 50 employees. At all relevant times herein, Defendant was a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## PROCEDURAL REQUIREMENTS

6. Prior to the filing of the original complaint, on or about April 15, 2020, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") for sexual discrimination, satisfying the requirements of 42 U.S.C. §2000e-5(b) and (e).

7. Plaintiff's Charge of Discrimination was timely filed within three hundred (300) days after the alleged unlawful employment practice occurred.

8. Thereafter, on September 1, 2020 the EEOC issued Plaintiff her Notice of Right-to-Sue letter with respect to such Charge.

9. The original Complaint has been filed less than ninety (90) days after Plaintiff's receipt of her Notice of Right-to-Sue letter.

10. This Amended Complaint was filed and served to the Defendant after leave of this Court.

## FACTUAL ALLEGATIONS

11. Plaintiff was employed with the Defendant as a coach cleaner for five (5) years.

12. At all relevant times herein Plaintiff's superintendent, Rich Pickens ("Pickens"), acted as her immediate supervisor.

13. While working for the Defendant, Plaintiff endured on-going sexual discrimination, intimidation and harassment that contributed to subjectively and objectively hostile work environment.

14. On or about August 16, 2019, Plaintiff was in the women's locker room resting after an sixteen (16) hour shift, when a male employee entered the locker room and without Plaintiff's permission took a picture of her with his cellphone.

15. When Plaintiff learned of this, she became extremely upset, felt violated and physically threatened.

16. Plaintiff filed an incident report with Foreman Celuis Escutia, and verbally reported and completed a full statement of incident to Director, Ed Withem, and Foreman, Melissa Phillips, on October 31, 2019. Moreover, Plaintiff asked that the picture be produced and eventually destroyed.

17. Plaintiff never received a copy of the picture and the investigation into these allegations was dropped.

18. On November 23, 2019, Plaintiff was standing by Track 2 with fellow Metra employees including her Superintendent, Pickens. Pickens without permission inappropriately touched Plaintiff on the back and shoulder. Plaintiff was taken aback by the touching which intensified the feeling of physical threat caused by the previous incident, and at that time told no one.

19. The next day, Plaintiff filed a report with the Metra Police Department.

20. Plaintiff is unaware whether Metra initiated an investigation or procured a resolution to this incident.

21. The Pickens incident was a second in a series of events where Plaintiff felt embarrassed and humiliated by the actions of a co-worker.

22. On December 29, 2019, Plaintiff was having lunch at a designated lunch area, when fellow employee, Jerry Hammonds ("Hammonds"), pulled his penis from his pants exposing himself to Plaintiff.

23. Plaintiff, taking into consideration previous lack of response from the Defendant regarding her reports, documented the event using her cellphone camera to photograph Hammonds engaging in inappropriate conduct, so she could preserve evidence for an investigation by Human Resources against Hammonds.

3

24. This last incident interfered with Plaintiff's work performance, as she became afraid of other fellow employees.

25. Plaintiff was traumatized after the Hammonds incident and was hiding in the women's locker room during her shifts, coming out only to perform her responsibilities.

26. Furthermore, this incident brought back memories of the locker room incident which also hindered Plaintiff's sense of safety at work.

27. A report was made with the Human Resources.

28. Hammonds was arrested and put on paid administrative leave until the February 2020 hearing.

29. On or about January 4, 2020, Plaintiff was involved in a series of incidents with fellow coach cleaner, Jeff Travis ("Travis").

30. Specifically, Travis went on Plaintiff's train and stated to the engineer and conductor, Eaton, "Look how dirty this car is. She [Plaintiff] didn't do a good job cleaning" thus, berating Plaintiff. Eaton defended Plaintiff and explained to Travis that "[Plaintiff] hasn't even made it here yet. She is coming from the north to this south car."

31. On the same day, Travis mocked Plaintiff.

32. Travis was working overtime at Plaintiff's location during her regular shift and was in Plaintiff's shanty, where normally waits between her shifts to be closer to trains coming in.

33. When Plaintiff asked Travis if he was going to leave the shanty and explained that she was normally in that shanty during her Saturday shift, Travis belched, "Not today you're not!"

34. Travis also made inappropriate comments about her appearance.

35. Later that day, January 4, 2020, Travis, after having a shouting match with Foreman Escutia, walked into the office where Plaintiff was having lunch. Travis walked by Plaintiff's table and stated, "Rita! You look nice! Why don't you look like that at 18th Street?"

36. Plaintiff, feeling embarrassed and uncomfortable asked Travis to stop talking to her with sexual overtones.

37. A few minutes later, Travis continued his sexual suggestions and stated to Plaintiff, "I'm done with my sandwich now, you can meet me in the shanty – we can share a shanty."

Plaintiff felt he was making sexual advances.

38. Plaintiff felt humiliated by Travis, who despite her direct instruction to not talk to her like this, continued to do so.

39. On January 4, 2020, Foreman Celsis Escutia and General Foreman Eugene Ross received the filed report and Plaintiff's statement regarding the aforementioned situations involving Travis. Plaintiff has no knowledge of whether corrective actions were taken against Travis.

40. All of the abovementioned events were both objectively and subjectively hostile and abusive to Plaintiff and detrimentally affected her work performance.

41. Furthermore, Plaintiff underwent therapy due to being diagnosed with anxiety and depression – mental illnesses that were deepened by the incidents mentioned herein and lack of reaction seeking solution on the side of Defendant.

42. The series of events that transpired between February 2020 and Plaintiff's receipt of termination letter on January 4, 2021, indicate that Plaintiff was subjected to a pattern of unwelcome sexual conduct, retaliatory actions for engaging in protected activities, and seeking and making formal complaints to both management and eventually to the Equal Employment Opportunity Commission.

43. After reporting the Travis incident, Travis, who was in charge of scheduling overtime for Coach Cleaners, retaliated against Plaintiff by not informing her or calling her in for available shifts. This caused Plaintiff to suffer economic loss, which she would not have endured if she had not reported Travis' harassing acts.

44. On February 29, 2020, Plaintiff participated in a hearing regarding Hammonds exposing himself.

45. During the hearing, Hammonds admitted that he took the photograph of Plaintiff resting in the locker room on or about August 16, 2019.

46. However, the hearing regarding Hammonds' misconduct on December 29, 2019, in actuality, never took place. In fact, the hearing was based on a nine-page statement rebuking Plaintiff and undermining her abilities to perform her duties.

47. Plaintiff's job satisfying job performance was undermined by Defendant because of Plaintiff's engagement in a protected activity. This is evidenced by the fact that Defendant was not preoccupied with conducting an appropriate hearing but rather targeting Plaintiff and putting her under special scrutiny.

48. Plaintiff reported the case to the Metra police; however, the charges were ultimately dropped, and Hammonds soon retired after the investigation.

49. On March 9, 2020, Plaintiff had a conversation with CFO Kevin Clifford about the Hammonds incident and Plaintiff's pain, suffering, and mental anguish. Plaintiff felt insulted when CFO Clifford asked her about mental anguish experienced by Hammonds.

50. Not only was this insulting to Plaintiff but would also be deemed as objectively harassing behavior.

51. Furthermore, such statements by one of Defendant's Chief Officers suggest that Plaintiff's well-being was not the concern of Metra but rather it was to simply demean the Plaintiff by rebuking her well documented complaints.

52. On March 12, 2020, Plaintiff was taking a break in a shanty, when Director Shon George walked in and criticized Plaintiff for working on a puzzle book.

53. Plaintiff explained she was taking her break; however, Director George ordered Foreman Steven Aardana to write a disciplinary statement regarding Plaintiff's alleged misconduct.

54. Plaintiff felt she was scrutinized and retaliated against after engaging in protected activities.

55. Plaintiff felt embarrassed for her attempts to pursue her rights and seek redress with the Defendant, therefore, she decided to abandon internal options for remedy in regard to the incidents herein alleged and defend her rights by filing a complaint with the EEOC on April 14, 2020.

56. On May 20, 2020, Director George spoke with Plaintiff over the phone and stated he "can abolish your [Plaintiff's] job" and encouraged Plaintiff to change her location because of the alleged issues she was causing "everywhere."

57. This incident further traumatized Plaintiff, who was already attending sessions with a therapist and taking prescription medicine for her trauma.

58. Plaintiff believes that Director George's threat was motivated by retaliatory reasons for Plaintiff's statutorily protected activities, as he was trying to force Plaintiff to change her working location, thus reflecting the retaliatory attitude toward Plaintiff in her workplace. In October 2020, Plaintiff was placed on administrative leave pending an investigation of Plaintiff's misconduct.

59. Plaintiff felt that this was in retaliation for her engagement in protected activity with the EEOC.

60. Thus, Plaintiff was subject to a series of retaliatory acts that interfered with her work performance, caused adverse employment actions, placed Plaintiff under special scrutiny, and were motivated by Plaintiff's engagement in protected activities.

61. After being served with the original complaint to this case, Defendant sent a termination letter to Plaintiff alleging four (4) different counts; however, Plaintiff did not act as Defendant's employee during all but one, of the times mentioned therein.

62. Furthermore, as shown herein, Plaintiff faced retaliatory conduct from several employees of Metra after she engaged in protected activities seeking relief for the sexual harassment incident.

63. Plaintiff performed her job responsibilities satisfactorily and the allegations put forth against her seem pretextual.

64. Thus, Defendant's termination of Plaintiff was retaliatory, and the reasons for termination were pretextual.

<u>COUNT I</u>

**Hostile Environment Sexual Harassment in Violation of Title VII.**

1-64. Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

65. Plaintiff was discriminated against and harassed based on sex by her immediate supervisor and fellow coworkers.

66. The discriminatory statements and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff's work conditions, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

7

67. Plaintiff followed internal procedures for remedy, notified Metra Police (Pickens inappropriately touching her), reported to Human Resources (Hammonds exposing his penis to Plaintiff), and notified Foreman Escutia (photo incident in the locker room) and General Foreman Eugene Ross (Travis' inappropriate comments).

68. Additionally, Plaintiff informed Director Ed Whithem and Foreman Melissa Phillips about the ongoing discrimination and harassment.

69. Thus, Metra had actual or constructive knowledge of the ongoing discrimination and harassment.

70. Metra failed to take prompt and appropriate, in fact, any remedial action to prevent or correct further discrimination and harassment of Plaintiff.

71. The Photo incident, the Superintendent incident, and the Travis incidents were not investigated by Metra whatsoever, despite timely notice provided by Plaintiff.

72. The Hammonds incident was promptly addressed initially; however, the disciplinary hearing seemed retaliatory toward Plaintiff, as it focused on rebuking her abilities to perform job duties.

73. Furthermore, the Hammonds incident, despite prompt initial reaction persisted until Hammonds retired – an event that was not a disciplinary consequence of the said incident.

74. The sexually harassing incidents aforementioned, considered in totality and as a matter of fact, constitute hostile work environment based on sexual harassment.

75. Therefore, Defendant discriminated against Plaintiff on the basis of sex in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

**WHEREFORE,** Plaintiff, Rita Falcon prays that this Court grant the following relief:

A. Advance this case on the docket, order a speedy hearing or trial at the earliest practical date, and cause this case to be expedited in every possible way;

B. Grant judgment in favor of Plaintiff and against Defendant for compensatory damages for emotional pain, suffering and psychological injury as authorized by Title VII;

C. Award Plaintiff punitive damages for Defendant's willful and wanton misconduct;

D.     Award Plaintiff her costs of litigation, including witness fees and reasonable attorney's fees incurred in connection with this action pursuant to 42 U.S.C. § 2000e-5(k);

E.     Grant Plaintiff such further and additional relief as this Court deems just and appropriate.

## COUNT II

### Retaliation for Engaging in Protected Activity in Violation of Title VII.

1-75. Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

76. Plaintiff engaged in protected activity multiple times; when she complained about the hostile work environment and sexual harassment to her supervisors, Human Relations, Metra Police, the EEOC, and by filing this lawsuit.

77. After filing a complaint about the Travis incident, Travis retaliated against Plaintiff by not calling her in for or informing her about available overtime shifts.

78. As a result, Plaintiff suffered economic loss, which she would not have experienced if she did not engage in a protected activity.

79. Furthermore, in retaliation for Plaintiff's complaints, in February 2020, Metra held a hearing based on a statement rebuking Plaintiff and undermining her ability to perform job duties without substantiation.

80. The incident with a puzzle book in the shanty further indicates that Plaintiff was retaliated against and placed under extreme scrutiny, because of her engagement in protected activities.

81. The retaliation endured by Plaintiff would dissuade a reasonable employee from making complaints of discrimination and harassment.

82. There was a causal connection between Plaintiff's complaints and the materially adverse actions taken against Plaintiff by Metra.

83. Defendant retaliated against Plaintiff for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

**WHEREFORE**, Plaintiff, Rita Falcon prays that this Court grant the following relief:

9

A. Advance this case on the docket, order a speedy hearing or trial at the earliest practical date, and cause this case to be expedited in every possible way;

B. Grant judgment in favor of Plaintiff and against Defendant for compensatory damages for emotional pain, suffering and psychological injury as authorized by Title VII;

C. Award Plaintiff punitive damages for Defendant's willful and wanton misconduct;

D. Award Plaintiff her costs of litigation, including witness fees and reasonable attorney's fees incurred in connection with this action pursuant to 42 U.S.C. § 2000e-5(k);

E. Grant Plaintiff such further and additional relief as this Court deems just and appropriate.

## COUNT III

**Retaliatory wrongful termination in violation of Title VII.**

1-83. Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

84. Plaintiff engaged in a protected activity when filed a complaint with the EEOC and initiated this lawsuit by filing the original Complaint.

85. Plaintiff is a female, thus a member of a protected class.

86. In October 2020, Plaintiff was placed on administrative leave pending an investigation into violations alleged against her.

87. The majority of violations alleged against Plaintiff occurred while Plaintiff was off-duty and did not interfere with her job performance.

88. Considering Metra's approach to the complaints filed by Plaintiff, where there was no disciplinary action, nor even a hearing, following the complaints, Metra's decision to terminate Plaintiff's employment seems retaliatory.

89. There was no adverse employment action taken against Plaintiff's male co-workers by Defendant – they were not terminated or put on paid administrative leave.

90. Plaintiff was wrongfully terminated because of her sex and due to her engagement in protected activity.

10

91. The decision to terminate Plaintiff's employment was made by Metra, after Defendant received the original Complaint.

92. The retaliatory termination occurred shortly after Defendant had knowledge of the alleged counts against it.

93. There was a causal connection between Plaintiff's complaints and the materially adverse actions taken against Plaintiff by Metra.

94. Defendant retaliated against Plaintiff for engaging in protected activity and in discrimination of her protected class membership that follows that follows from being a female in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) and §2000e-2(a).

**WHEREFORE**, Plaintiff, Rita Falcon prays that this Court grant the following relief:

A. Advance this case on the docket, order a speedy hearing or trial at the earliest practical date, and cause this case to be expedited in every possible way;

B. Grant judgment in favor of Plaintiff and against Defendant for compensatory damages for emotional pain, suffering and psychological injury as authorized by Title VII.

C. Award Plaintiff punitive damages for Defendant's willful and wanton misconduct;

D. Award Plaintiff her costs of litigation, including witness fees and reasonable attorney's fees incurred in connection with this action pursuant to 42 U.S.C. § 2000e-5(k);

E. Grant Plaintiff such further and additional relief as this Court deems just and appropriate.

Respectfully Rita Falcon,

By: _____
One of Her Attorneys

Joshua N Karmel, Illinois Bar No. 6208369
The Law Offices of Joshua N Karmel
3000 Dundee Rd., Ste 311
Northbrook, Illinois 60062
847-282-4942
Jklaw1226@gmail.com


Brad E Karlin, Illinois Bar No. 6307899
Of Counsel, The Law Offices of Joshua N Karmel
3000 Dundee Rd., Ste 311
Northbrook, Illinois 60062
847-282-4942
bk.karlinlegal@gmail.com

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that I served the attached document via electronic

filing  on February 1, 2021   to the below listed individuals:

Jamie Harrmann Esq.

*JHarrmann@metraarr.com*

Renee Mazur Esq.

*rmazur@metrarr.com*

_____/s/ Joshua N Karmel

Joshua N Karmel Esq.

One of the attorneys for the Plaintiff

Joshua N Karmel Esq.

The Law Offices of Joshua N Karmel

3000 Dundee Rd. Ste 311

Northbrook, Illinois  60062

jw1226@gmail.com

847-282-4942

Bradley E. Karlin,Esq.

Of Counsel, The Law Offices of Joshua N Karmel

3000 Dundee Rd., Ste 311

Northbrook, Illinois  60062

Bk,karlinlegal@gmail.com

847-282-4942